**Wolfram MANSEL, Plaintiff,**

v.

**BAKER HUGHES, INC. and Western Atlas International, Inc. Defendants.**

**No. CIV.A.G–01–680.**

United States District Court, S.D. Texas, Galveston Division.

May 6, 2002.

Francis I. Spagnoletti, Spagnoletti & Assoc, Houston, for Wolfram Mansel, plaintiffs.

John R Pearson, Gardere Wynne et al., Houston, for Baker Hughes, Inc., Western Atlas International, Inc., defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff Wolfram Mansel ("Mansel") brings this maritime lawsuit against De-

fendants Baker Hughes, Inc. ("Baker Hughes") and Western Atlas International, Inc. ("Western Atlas") seeking damages for personal injuries that he allegedly sustained while working on board the M/V WESTERN ANCHORAGE ("Anchorage"), a vessel owned by Western Atlas. Mansel asserts claims for maintenance and cure, negligence and unseaworthiness pursuant to the general maritime law of the United States or, alternatively, pursuant to the applicable laws of Nigeria, Germany or Peru. Now before the Court is Defendants' Motion for Partial Summary Judgment on all claims brought by against them pursuant to the maritime law of the United States. For the reasons articulated below, the Court concludes that Defendants' Motion is meritorious and shall be **GRANTED.**

### I.

The Parties do not dispute the following facts. Mansel, a German citizen permanently residing in Lima, Peru, worked for Western Geophysical (a division of Western Atlas) as a seismic gunner aboard the Anchorage. Mansel contends that he was injured during the course and scope of his employment while the Anchorage was situated within Nigerian territorial waters.[1] At the time of his alleged injury, Mansel and his fellow crew members were conducting seismic surveys for the purpose of locating and mapping subsurface hydrocarbons.

### II.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When one party moves for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under the governing law preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. Nevertheless, if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475

---

1. The navigation chart submitted by Defendants pinpoints the relevant location of the Anchorage at Latitude 04 13 N and Longitude 07 15 E, approximately ten (10) miles off the Nigerian coast. Nigeria, as a signatory to the United Nations Convention on the Law of the Sea ("UNCOLS"), recognizes twelve (12) nautical miles as the boundary of its territorial waters. *See* United Nations Convention on the Law of the Sea, Dec. 10, 1982, § 2, art. 3, 1833 U.N.T.S. 3, 401, 21 I.L.M. 1245, *available at* United Nations web-page, <http://www.un.org/Depts/los/convention_agreements/convention_overview_convention>.

Although the U.S. Senate has not yet ratified UNCOLS, the United States "is obliged to refrain from acts that would defeat the object and purpose of the agreement." *See* Restatement (Third) of Foreign Relations Law § 312(3). Moreover, the boundaries of the United States similarly extend, by a 1989 Presidential Proclamation, to twelve nautical miles offshore. *See* Proclamation No. 5928, 54 Fed.Reg. 777 (1989); *see also United States v. Ramirez–Ferrer,* 82 F.3d 1131, 1133 (1st Cir.1996) (*en banc*). Accordingly, the Court concludes that the Anchorage was within Nigeria's boundary line for purposes of this action.

U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.*, 799 F.Supp. 691, 693 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

## III.

Defendants seek partial summary judgment on Mansel's general maritime law claims pursuant to § 688(b) of the Jones Act, which provides:

(1) No action may be maintained under [the Jones Act] or under any other maritime law of the United States for maintenance and cure or for damages for the injury or death of a person who was not a citizen or permanent resident alien of the United States at the time of the incident giving rise to the action if the incident occurred—

(A) while that person was in the employ of an enterprise engaged in the exploration, development, or production of off-shore mineral or energy resources—including but not limited to drilling, mapping, surveying, diving, pipe-laying, maintaining, repairing, constructing, or transporting supplies, equipment or personnel, but not including transporting those resources by a vessel constructed or adapted primarily to carry oil in bulk in the cargo spaces; and

(B) in the territorial waters or waters overlaying the continental shelf of a nation other than the United States, its territories, or possessions. As used in this paragraph, the term "continental shelf" has the meaning stated in article I of the 1958 Convention on the Continental Shelf.

(2) The provisions of paragraph (1) of this subsection shall not be applicable if the person bringing the action establishes that no remedy was available to that person—

(A) under the laws of the nation asserting jurisdiction over the area in which the incident occurred; or

(B) under the laws of the nation in which, at the time of the incident, the person for whose injury or death a remedy is sought maintained citizenship or residency.

46 U.S.C.App. § 688(b). As recited above, the facts of this case establish that at the time in question, Mansel was an alien employed by an enterprise engaged in the exploration of off-shore resources within the territorial waters of a foreign nation. Furthermore, Defendants have submitted affidavits establishing that Mansel has adequate remedies under German, Peruvian and Nigerian law. Mansel has not submitted any evidence challenging the affidavits put forth by the Defendants. Therefore, the Court concludes that each of Mansel's claims fall squarely within the prohibition of § 688(b). *See Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374, 1376–77 (5th Cir.1988); *Samuel v. Tidewater Marine Servs., Inc.*, 943 F.Supp. 644, 646 (E.D.La.1996); *Olin v. Tidewater, Inc.*, 897 F.Supp. 968, 971 (S.D.Tex.1995).

Mansel attempts to sidestep the § 688(b) bar to his maritime law claims by arguing that the Oceanographic Research Vessels Act ("ORVA"), 46 U.S.C.App. § 441 *et seq.*, and the Fifth Circuit's decision in *Presley v. Vessel Carribean Seal*, 709 F.2d 406 (5th Cir.1983), provide him with a cause of action. In *Presley*, the court explained that ORVA precludes "scientific personnel" from bringing claims pursuant to the Jones Act, but does not bar "scientific personnel" from bringing an action pursuant to the general maritime

law of this country.[2] *See Presley*, 709 F.2d at 408. Relying on this proposition, Mansel argues that (1) he falls within ORVA's definition of "scientific personnel"; and therefore (2) he can put forward claims pursuant to the general maritime law of the United States. The Court disagrees.

Mansel's reliance upon *Presley* is misplaced. *Presley* stands for the proposition that individuals who fall within ORVA's definition of "scientific personnel," and therefore cannot recover under the Jones Act, are eligible to recover under the general maritime law. *See id.* But contrary to Mansel's assertion, *Presley* does not create a cause of action for "scientific personnel" to recover damages pursuant to the general maritime law in situations where that body of law is otherwise unavailable to them.[3] The Fifth Circuit's holding in a later case, *In re Digicon Marine, Inc.*, 966 F.2d 158 (5th Cir.1992), mandates this conclusion. In that case, the court explained that ORVA "does not provide a cause of action ... it provides only a defense to a Jones Act action." *Id.* at 160. Thus, the supposition that Mansel *may* fall within ORVA's scope does not somehow change the fact that the plain and unambiguous language of § 688(b) bars him from asserting *any* claim "under [any] maritime law of the United States." Accordingly, the Court finds that § 688(b) of the Jones Act bars Mansel's claims for maintenance and cure, negligence and unseaworthiness pursuant to the general maritime law of the United States, as a matter of law. Because no genuine issue of material fact exists with respect to such claims, Defendants' Motion for Partial Summary Judgment is hereby **GRANT-**

ED. Mansel's foreign law claims remain pending.

**IT IS SO ORDERED.**

---

**2.** ORVA defines "scientific personnel" as those "persons aboard a vessel solely for the purpose of engaging in scientific research, instructing or receiving instruction, in oceanography or liminology." 46 U.S.C.App. 411(2).

**3.** The *Presely* decision does not address the interaction between ORVA and § 688(b) at all, most likely because the plaintiff in that case appears to have been American. *See Presley*, 709 F.2d at 407 (making no suggestion that plaintiff was not a U.S. citizen).